UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY GIBBS,                                    No. 07-15462

             Plaintiff,                       District Judge Gerald E. Rosen

v.                                                Magistrate Judge R. Steven Whalen

TIM BALL, ET.AL.,

             Defendants.

_____ /

## REPORT AND RECOMMENDATION

Before this Court is Defendants' June 3, 2008 Motion for Summary Judgment [Docket #18], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing federal claims against Defendants Tim Ball, Shelley King, and Dan Smith with prejudice. I further recommend that the Court decline supplemental jurisdiction over Plaintiff's state law claims, dismissing them without prejudice.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, a Michigan Department of Corrections ("MDOC") inmate currently housed at Marquette Branch Prison in Marquette, Michigan, filed suit on December 26, 2007, pursuant to 42 U.S.C. §§1981, 1983, 1985, 1986.[1] He alleges violations of his First, Fourth, Eighth, and Fourteenth Amendment rights by MDOC staff. On March 21, 2008, the Honorable Gerald E. Rosen dismissed Defendants Birkett, Caruso, Meagher, Cox, and

_____

[1]Co-Plaintiff William Walker was terminated on March 12, 2008 for failure to pay the filing fee. *Docket #8.*

Armstrong pursuant to 28 U.S.C. § 1915(e)(2), noting that Plaintiff had failed to allege personal involvement by these Defendants. *Docket #9.*

Plaintiff alleges constitutional violations in 2004 and 2005 by Standish Maximum Correctional Facility ("SMF") staff, including present Defendants Tim Ball, formerly a Resident Unit Manager ("RUM"), Shelley King, also a SMF RUM, and Dan Smith, a former SMF Grievance Coordinator. The Complaint, containing 292 paragraphs, is summarized as follows.

Plaintiff alleges that between March 30, 2004 and October 28, 2004, he attempted to file complaints concerning Defendant Ball's supervision of the housing unit. *Complaint* at ¶44.   Plaintiff acknowledges that he encouraged other prisoners to file administrative grievances, stating that he was "seek[ing] constructive non-violent corrective measures" to protest Ball's actions. *Id.* at ¶45. Plaintiff alleges that earlier in April and May, 2004, Ball threatened to falsely charge him with misconduct if he continued to file grievances. *Id.* at ¶46. Plaintiff claims that he temporarily suppressed his complaints, but faced with "massive malfeasance" in the unit, resumed "openly speak[ing] about the staff's nefarious actions" in August, 2004. *Id.* at ¶48.   Plaintiff claims that the same month, after he refused to discontinue complaining about prison conditions, Ball moved him from his current unit to less favorable quarters and later moved him to an even worse wing when he discovered that Plaintiff continued to encourage other prisoners to file grievances. *Id.* at ¶¶94-95. He alleges that Ball ultimately arranged for his move to the worst wing of the prison. *Id.* at ¶98. Plaintiff states that Ball, upon discovering that Plaintiff was communicating with his "legal assistant" through a cell vent, moved him again, placing him in a cell surrounded by either "racists" or mentally ill inmates. *Id.* at ¶¶100-102.   Plaintiff alleges that as a result, he was subjected to racial slurs, banging, and screaming. *Id.* at ¶¶103-104.  He alleges that in August, 2004, Ball,

-2-

threatening him with administrative segregation, also informed him that "'he was not going to have some Brillo headed (sic) retard telling me how to deal with [his] staff[.]'" *Id.* at ¶49. Plaintiff claims that Defendant Smith  refused his attempt to file a grievance. *Id.* at ¶50.

Plaintiff, also stating that he did not attempt to file a grievance against Ball between August and October, 2004, alleges that on October 14, 2004, Ball charged him with major misconduct ticket for interfering with the administration of rules.  *Id.* at ¶53.   Plaintiff disputes the substance of the misconduct charge (dismissed along with a second ticket on procedural grounds), which alleges that he attempted to file a complaint containing knowingly false information about other SMF staff members. *Id.*  Plaintiff also contends that Ball, in referring to Plaintiff as a "snitch," violated his Eighth Amendment rights. *Id.* at ¶56.  Plaintiff alleges that Ball told him that he wrote the ticket in retaliation for Plaintiff's attempt to file grievances. *Id.* at ¶¶73, 79.  Plaintiff also alleges that on December 29, 2005,[2] Ball incited racial harassment against Plaintiff by informing an inmate in an adjacent cell, Defendant Johnny Brown, that Plaintiff had killed an 85 year-old white woman.[3] *Id.*  at ¶¶183-184.  Plaintiff alleges that as a result, Brown induced another prisoner to "pour[] urine and fecal matter through the vent system and into [Plaintiff's] cell." *Id.*  at ¶186.  Plaintiff's allegations against Ball include the state law claims of liable and slander, ethnic intimidation, and malicious prosecution.  *Id.* at ¶¶263, 268, 277.

Plaintiff alleges that soon after Defendant King took charge of his unit (January, 2005) she accused Plaintiff of being a snitch within earshot of  other prisoners, knowingly placing

---

[2] Plaintiff alleges subsequently that Defendant King assumed Ball's position in February, 2005. This suggests that the incident alleged in paragraph 184 occurred on December 29, *2004* rather than 2005. *See Docket #18*, Exhibit A-1 at ¶21.

[3] Defendant Brown has not been served.

-3-

his safety in peril. *Id.* at ¶¶197-198.   Plaintiff alleges that as a result, he experienced severe mental and emotional problems, requiring him to be placed under psychiatric observation. *Id.* at ¶¶206-212.   Plaintiff claims that upon his return to the unit, King placed him in a cell next to one of Brown's cohorts with the knowledge that Plaintiff would be subjected to continued harassment. *Id.* at ¶213.   When Plaintiff refused placement in the cell, he alleges that King proposed placing him in the cell next to Brown, again aware that Plaintiff would be harassed. *Id.* at ¶215.

Plaintiff, acknowledging that he had been previously placed on "Modified Access Status" (requiring him to request permission to file a grievance), alleges that Defendant Smith repeatedly refused to allow him to file "legitimate" grievances. *Id.* at ¶59.   He claims that upon attempting to file  grievances against Ball on October 17, 2004 and again on November 3, 2008 (one day after a misconduct dismissal) Smith refused to provide him a grievance form on the basis that "insufficient evidence" supported his allegations of retaliation. *Id.* at ¶¶83-84, 88.   Plaintiff also faults Smith for failing to process his attempted grievances against a non-defendant staff member on October 11 and 25, 2004, or former Defendants Birkett and Caruso on October 25, 2004.   *Id.* at ¶¶107, 110, 111, 113. Plaintiff's allegations against Smith include the state law claims of abuse of process and malicious prosecution. *Id.* at ¶¶267, 280.   Plaintiff requests monetary damages as well as injunctive relief.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the

non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## IV.  ANALYSIS

### A.  Eight Amendment Claims

Defendants argue first that Plaintiff's Eighth Amendment claims should be dismissed, noting that Plaintiff's allegation that staff allowed inmates in adjoining cells to place urine, feces, and blood in his vent are belied by the fact that cells' vents "do not even connect together from side to side." *Docket #18,* Exhibit B-1.  Defendant King further denies that she ever called Plaintiff a "rat" or otherwise attempted to imperil his safety. *Id.,* Exhibit B-1.

The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon prisoners.  In order for a prisoner to establish an Eighth Amendment violation under § 1983, he must allege and prove an unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 346 (1981).  Eighth Amendment claims must satisfy a two-prong standard.  First, the alleged wrongdoing must be "objectively harmful enough" to establish a constitutional claim (objective component).  Second, the prison official must act with the requisite state of mind (subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component is contextual and responsive to "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  The Supreme Court has clearly held that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* at 9.  Therefore, a prisoner need not show a significant injury. *Id.; Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993) (citing *Hudson* to conclude that the extent of injuries does not provide a basis for dismissal).

-6-

The subjective component is evaluated by "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) , citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), *cert. denied sub nom, John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). *See also Hudson*, 503 U.S. at 6-7 (extending *Whitley* to all cases of excessive force by prison officials). The factors to be considered when weighing the conduct of prison officials are: 1) the need for the application of force; 2) the relationship between the need for force and the amount used; and 3) the extent of the injury inflicted. *Whitley*, 475 U.S. at 321.

Plaintiff's farfetched claim that Defendant Ball and King encouraged Defendant Brown and/or his cohorts housed in adjoining cells to place blood, urine, and feces into Plaintiff's cell vent is defeated by uncontradicted evidence that Plaintiff's cell vents did not connect with vents in adjoining cells. *Docket #18*, Exhibit B-1.

The Eighth Amendment claim that King called Plaintiff a "rat" within earshot of other prisoners is also subject to dismissal. Courts have recognized that "being labeled a 'snitch' in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment." *David v. Hill*, 401 F.Supp.2d 749, 756 (S.D.Tex. 2005); *United States v. Henderson*, 565 F.2d 900, 905 (5th Cir.1978). *See also Comstock v. McCrary*, 273 F.3d 693, 699 N2 (6th Cir.2001)(acknowledging that "[b]eing labeled a 'snitch' was dreaded, because it could make the inmate a target for other prisoners' attacks") Nonetheless the "rat" or "snitch" claims against both King and Ball fail on multiple grounds. First, Plaintiff's response to the present motion fails to refute King's denial that she labeled Plaintiff a "rat." *Compare Docket #18*, Exhibit B at ¶5 with *Docket #20* at 12-13 of 14. Second, despite Plaintiff's statement that as a result of King's actions he experienced "severe

mental and emotional problems" requiring psychiatric observation, *Complaint* at ¶206, his failure to allege a physical injury defeats the Eighth Amendment claim.  While the Sixth Circuit has previously "decline[d] to hold that establishing an actual [physical] injury is a necessary predicate to receive damages for an Eighth Amendment violation," *Parrish v. Johnson,* 800 F.2d 600, 610 (6th Cir. 1986), under the subsequently enacted Prison Litigation Reform Act of 1996 ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U .S.C. § 1997e(e).[4]  *See also Wilson v. Yaklich,* 148 F.3d 596, 601 (6th Cir.1999)(*citing Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991))("[A] claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities,' that is the touchstone of a conditions-of-confinement case").  Although Plaintiff claims that he was threatened by other prisoners, the Complaint omits any reference to an actual physical injury as a result of King's alleged statement.

Third, Plaintiff's response provides no rebuttal to Defendants' contention that he fabricated the "rat" allegations in an attempt to manipulate a transfer to a different unit by accusing various staff members of improprieties.  *Docket #18*, Exhibit B-1, B-2.  Further,

---

[4]

 *Middlebrook v. Tennessee,* 2008 WL 2002521, *6 (W.D.Tenn. 2008), citing Third, Fifth, and Seventh Circuit case law, found that "while § 1997e(e) bars prisoners from seeking compensatory damages for constitutional claims when there is no physical injury, they may be awarded punitive or nominal damages based on the alleged violation of their constitutional rights, rather than on any emotional or mental distress suffered as a result of the violation." *Id*.; *Hutchins v. McDaniels,* 512 F.3d 193, 197 (5th Cir.2007); *Calhoun v. Detella,* 319 F.3d 936, 941-42 (7th Cir.2003); *Allah v. Al-Hafeez,* 226 F.3d 247, 253 (3d Cir.2000).  Even so, Plaintiff's failure to establish emotional distress as a factual matter or refute King's affidavit bars the recovery of non-compensatory damages.

although Plaintiff attributes his February, 2005 psychiatric observation to emotional distress

caused by King's statement that he was a rat, the 48-page complaint and accompanying 56

pages of exhibits contain a dearth of material (treatment notes, etc.) to support his claim that

he was placed in an observation unit as a result of the alleged "rat" comment. Nor has

Plaintiff submitted any such material in response to the summary judgment motion.

### B.  Retaliation Claims

Defendants argue further that Plaintiff's First Amendment retaliation claim is also

subject to dismissal.[5] *Defendants' Brief* at 8-9. They contend that Plaintiff's "non-legitimate"

grievances cannot be considered "protected conduct" for the purposes of his retaliation

claims.  *Id.* at 9.   Ball also denies that he wrote major misconduct tickets to retaliate against

Plaintiff for filing grievances.[6]  *Docket #18,* Exhibit B at ¶12.[7]

---

[5]

Because Plaintiff's allegations of verbal abuse amount to neither a constitutional violation or the "adverse action" prong of a retaliation claim the Court need not discuss these claims at length.  "An inmate has no right to be free from verbal abuse."*Carney v. Craven,* WL 1315605, *2 (6th Cir. 2002); *Ivey v. Wilson,* 832 F.2d 950, 954-55 (6th Cir.1987). Further, as discussed *supra,* the dearth of evidence supporting the claims of human waste placed in the ventilation system, the "rat" allegation, or the gassing of Plaintiff's cell forecloses consideration of whether those alleged actions were retaliatory.

[6]

Neither Defendants' Brief nor King's affidavit contain mention of her May 16, 2005 major misconduct ticket against Plaintiff. However, she states that Plaintiff's Eighth Amendment claims, discussed in Section **A.** were unsubstantiated. *Docket #18,* Exhibit B at ¶¶5, 8.  She states further that by filing continuous and unfounded complaints against staff members and other prisoners,  Plaintiff "appeared to be attempting to manipulate a [cell] move." *Id.* at ¶9.  She indirectly references Plaintiff's claim that she retaliated against him by writing the ticket by stating that for the period in question, she  "acted in good faith, within the scope of [her] authority, and in accordance with [her] understanding of the statues, rules and policies governing the Michigan Department of Corrections." *Id.* at ¶13. Accordingly, the Court will consider the merits of the retaliation claims against King.

[7]

Plaintiff also alleges that Ball moved him to a different unit in retaliation for asserting his First Amendment right to file legitimate grievances. *Complaint* at ¶¶94-101.  Defendant Ball responds that Plaintiff was moved from "Unit I to Unit II" for misbehavior. *Docket #18,*

In *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." "[F]iling a false major misconduct ticket" in response to an inmate's filing of a non-frivolous grievance constitutes a First Amendment violation. *Scott v. Churchill,* 377 F.3d 565, 567 (6th Cir. 2004); *see also Brown v. Crowley,* 312 F.3d 782 (6th Cir. 2002). However, "[t]his right is protected, however, only if the grievances are not frivolous." *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000). "'Depriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.'" *Id.* (*citing Lewis v. Casey*, 518 U.S. 343, 353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

Plaintiff was placed on Modified Grievance Access on September 8, 2004 by Defendant Smith after filing hundreds of grievances in violation of MDOC PD 03.02.130 which prohibits "an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language." *Docket #18,* Exhibit C at ¶¶4-5. While on "modified access," Plaintiff was thus limited to requesting grievance forms and obtaining approval of the Step I Grievance Coordinator before filing a grievance. *Id.* at ¶5. While on

---

Exhibit A at ¶14. King also noted in a January, 2005 internal memo that made Plaintiff made continuous, unfounded complaints regarding prison conditions in an effort to "manipulate which cell he is placed in." *Id.,* Exhibit B-1. Plaintiff, complaining in January, 2005 that he had "already serve[d] detention time, apparently acknowledges non-retaliatory reasons for his original placement in detention. *Complaint* at 1-2, pg. 6 of 50. While pursuant to *Thaddeus-X,* a cell change could qualify as "adverse action" sufficient to deter an individual of ordinary firmness from exercising his First Amendment rights, as discussed more fully in Section **C-D**, *infra,* evidence shows non-retaliatory reasons for Plaintiff's housing placement.

-10-

Modified Grievance Status, Plaintiff attempted to file a grievance on October 12, 2004, alleging improprieties by non-defendant staff.  *Id.* at ¶6.

Defendant Smith rejected the grievance as both duplicative and lacking substance.  *Id.* Defendant Ball, after reviewing the substance of Plaintiff's October 12, 2004 proposed grievance and conducting an investigation, issued  major misconduct tickets on October 14, 2004 and November 1, 2004, based on Plaintiff's alleged "[i]nterference with the [a]dministration of Rules," including "making false accusations of misconduct against . . . staff" as prohibited by PD 03.03.105.  *Id.* at ¶5.  The misconduct hearing report indicates that both misconduct reports were dismissed prior to a hearing on the merits on technical grounds as a result of Ball's failure to seek the approval of either the Warden or Area Manager before issuing the ticket. *Id.* at Exhibits A-3, 5.  Similarly, a misconduct ticket issued by King on May 16, 2005  was dismissed absent a "guilty" or "not guilty" finding on the grounds that the ticket's lack of specificity amounted to a failure "to give proper notice" to Plaintiff. *Complaint* at 1-2, 20, 34 of 50.  Hence,  the hearing determinations, by themselves, do not shed light on whether the tickets were issued with retaliatory motives.

However, Defendants have provided ample, non-retaliatory reasons for issuing the tickets in question.  Ball freely admits that he "attempted to utilize an administrative process to get prisoner Gibbs to stop filing false complaints against staff . . ."  after discovering that "a review of video tapes" and staff interviews "failed to support any of prisoner Gibbs' allegations." *Docket #18*, Exhibit A at ¶¶6, 8.   Ball, confronted with evidence that Plaintiff (already placed on Modified Grievance Access for abusing the grievance process) had attempted to file a false report, was entitled to issue a misconduct ticket. PD 03.03.105.

Likewise, the record shows legitimate and non-retaliatory reasons for King's May 16,

2005 misconduct ticket.  Defendants' exhibits show that Plaintiff made at least 13 informal complaints between January and May, 2005.  *Docket #18,* Exhibits B-2-17.  The complaints allege that various staff members 1) deliberately housed him in a cell adjacent to racists, 2) "gassed" his cell, 3) encouraged prisoners in adjacent cells to place urine, feces, and blood in the vents, 4) used racial epithets, 5) ignored threats made by other prisoners, 6) made sexually suggestive comments to Plaintiff, 6) threatened to poison his food.  *Id.*   Internal correspondence shows that each complaint was investigated and found meritless.  *Id.*   As discussed further, *infra,* Defendant Smith states that he denied seven requests by Plaintiff to file a grievance on the grounds that the complaints were either duplicative of earlier grievances or pertained to his major misconduct tickets which are "non-grievable" under PD 03.02.130.  *Docket #18,* Exhibit C.

Although under the first prong of *Thaddeus-X*, filing legitimate grievances regarding prison conditions is protected conduct, frivolous grievances (including grievances containing knowingly false accusations) are not.  *Herron v. Harrison,* 203 F.3d at 415.  Accordingly, Plaintiff has failed to meet the first prong of *Thaddeus-X*.   Likewise, while case law supports the argument that under the second prong of  *Thaddeus-*X, filing a major misconduct ticket qualifies as an "adverse action," Plaintiff is unable to establish "causation" under the third prong.  Although Plaintiff would argue that the major misconduct tickets were in fact directly precipitated by the grievances and complaints, *see Brown v. Crowley,* 312 F.3d 782, 790 (6th Cir. 2002), the evidence shows that pursuant to PD 03.03.105, Defendants clearly had legitimate and non-retaliatory grounds to ticket Plaintiff for filing grievances containing falsehoods regarding staff members.

Although the facts in  *Brown* (issuance of a major misconduct ticket in response to filing of a non-frivolous grievance sufficient to satisfy "causal connection" prong of

*Thaddeus-X*) and the present case are superficially similar, the two cases are distinguishable. As in the present case, Brown filed multiple grievances as well as letters of complaint to various MDOC officials.   He also received major misconduct tickets for filing false grievances/complaints.  However, Brown's multiple grievances and letters to various MDOC officials related exclusively to his attempts to rectify what he believed was an improper debit to his prison account. *Id.* at 790.  On the other hand, present Plaintiff, at the time of the events in question, had been placed on Modified Grievance Access after filing hundreds of grievances accusing various staff members of a panoply of misdeeds.[8]  *Docket #18,* at Exhibit C.   Moreover, in  *Brown,* the  hearing officer exonerated the plaintiff of the misconduct charges, stating that "prisoner had a reasonable belief that his allegations were not false," *Id.* at 790, whereas here, in each case, the hearing officers dismissed the tickets without a "not guilty" finding, on either purely procedural grounds or because the charges lacked specificity. *Complaint, Docket #1-2* at pg. 10, 17, 20 of 50.  Extending the *Brown* holding to find "causation" wherever staff members  issue misconduct tickets in response to the misuse of the grievance system would not only curtail the MDOC's ability to discourage frivolous filings, but lead to the absurd result of providing inmates who continually abuse the grievance system with automatic grounds for a First Amendment retaliation suit.

### C.  Equal Protection

Defendants argue further that Plaintiff's equal protection claim should be dismissed, providing non-discriminatory reasons for moving him to a less desirable cell, placing him on Modified Grievance Access, and writing the misconduct tickets. *Defendants' Brief* at 6.

_____

[8]Defendant Smith states that Plaintiff filed "196 grievances through the third step of the grievance process," and "potentially hundreds of grievances filed at Step I and Step II, but not at Step III." *Docket #18,* Exhibit C at ¶14.

-13-

Defendants also argue that Ball's alleged use of derogatory language, even if true, does not rise to the level of a constitutional violation.  *Id.*

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C. Const. Amend. XIV § 1.  "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005); *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997); 42 U.S.C. §1981.  The Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id.*; *Vacco,* at 521 U.S. at 799.   In order for the court to apply strict scrutiny, the plaintiff must "allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification" or was "intentionally discriminated against because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir. 1999).

Plaintiff, an African-American, is a member of a suspect class. "In prison housing, the Equal Protection Clause forbids racial classifications absent compelling justifications and a narrowly tailored plan." *Brand v. Motley* 526 F.3d 921, 924 (6th Cir. 2008); *Johnson v. California,* 543 U.S. 499, 509, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005). "[A]n inmate, like anyone else, retains the right to be free from government-sponsored race discrimination unsupported by a compelling interest." *Brand* at 924; *Johnson,* 543 U.S. at 508-15, 125 S.Ct. 1141.

As discussed first in fn. 6, *supra,* and in Section **D.**, *infra,* Defendants have

-14-

established legitimate, non-retaliatory reasons for Plaintiff's housing placement. Likewise, Plaintiff's claims that his cell changes were motivated by racial animus stand with at odds with non-discriminatory as non-retaliatory reasons for his move to a less desirable unit. While Plaintiff asserts that he continued to be held in detention well beyond his 30-day sentence, an April, 2005 memorandum states that although Plaintiff was not placed in a cell of his liking, he was no longer in detention. *Docket #18,* Exhibit B-11. While he alleges further that he received an unfavorable placement because he was black, a January, 2005 memo states that inmates in Plaintiff's wing consisted of three white and three black inmates, noting further that the prisoners "continually bicker[ed] racial slurs back and forth to each other." *Id.* at B-1. Another memo noted that contrary to Plaintiff's complaints, he was the instigator (rather than the victim) of racial conflicts. *Id.* at B-6.

Similarly, as discussed above, Defendants have established legitimate reasons for Plaintiff's Modified Grievance Access and the issuance of misconduct tickets. More obviously, because Plaintiff has failed to state that in receiving the modified access or tickets he was treated differently than similarly situated non-black prisoners, these claims should be dismissed. Finally, Plaintiff's claims that Defendant Ball used racial epithets, taken as true, does not amount to a constitutional violation. *Ivey v. Wilson,* 832 F.2d 950, 954-55 (6th Cir.1987). *See also Latona v. Pollack* 2007 WL 4241893, *9 (W.D.Pa.2007);*Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir.1987)("Use of derogatory racial epithets or slurs does not violate the due process clause of the Fourteenth Amendment.")

### D.  Due Process

Defendants argue next that Plaintiff's due process claims regarding his cell are subject to dismissal, noting that Plaintiff does not enjoy a liberty interest in "a particular housing

-15-

placement." *Defendants' Brief* at 10.   To the extent the claim can be construed to allege constitutional violations in the disciplinary process, Defendants note that Plaintiff received a fair hearing resulting in the dismissal of the misconduct charges on procedural grounds. *Id.*

"Even after a proper conviction and sentence, an inmate still retains a 'liberty' interest, guarded by due process, with respect to state-imposed prison discipline that rises to the level of an 'atypical and significant hardship on the inmate.'" *Harden-Bey v. Rutter,* 524 F.3d 789, 792 (6th Cir. 2008)(*citing Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).   Acknowledging that placement in administrative segregation by itself does not implicate a liberty interest pursuant to *Sandin,* the Sixth Circuit nonetheless remanded *Harden-Bey* for a determination of "whether the nature of this placement in administrative segregation together with its duration [three years with an indefinite termination] creates a cognizable liberty interest and, if so, whether the State has given Harden-Bey the protection to which he is due." *Id.* at 793.

Neither the nature nor duration of Plaintiff's placement in administrative segregation shows  atypical or significant hardship.   Plaintiff's exhibits indicate that he received an apparently legitimate 30-day detention beginning on November 9, 2004. *Complaint,* Docket #1-2, pg 14 of 50.   Plaintiff complained that he had not been moved out of his "detention" cell on December 9, 2004. *Id.*  However, a January 12, 2005 memo indicates that for the period of Plaintiff's detention, he had instead been placed in an administrative segregation cell because "detention" cells were unavailable. *Docket #18,* Exhibit B-1.  Contrary to Plaintiff's unilateral expectation that he should have been moved from the "detention cell" on  December 9, 2004,   Defendant King informed him that he would remain in what was in fact an *administrative* segregation cell, due to the fact that he was "the instigator in quite a bit of the racial discrimination with other prisoners" in the same wing, and would be moved when "staff

-16-

and other members of the housing unit team see an improvement in [his] behavior." *Id.,* Exhibit B-10. Plaintiff was thus informed that 1) he was no longer in detention 2) he in effect "held the keys" to his administrative segregation cell.

Additional evidence supports the conclusion that the duration of Plaintiff's administrative segregation stay was not "atypical." A third step grievance response dated November 17, 2006, referring to Plaintiff's fear that he would be "*returned* to the hole," indicates that at some point between June, 2005 and July, 2006, Plaintiff was removed from administrative segregation. *Complaint,* Docket #1-3, pg. 4 of 50. Plaintiff spent at most somewhere between six and 18 months in administrative segregation.

Moreover, in contrast to the plaintiff's open-ended administrative segregation stay in *Hardin-Bey,* Plaintiff's due process claim is undermined by his failure to allege that Defendants failed to periodically review his administrative segregation status as required by the Policy Directive.

> "Wardens shall personally interview each prisoner in their respective institutions who has been confined in administrative or punitive segregation for six continuous months. If the prisoner continues in administrative or punitive segregation beyond the first six month period, the Warden shall interview the prisoner every six months thereafter until the prisoner is released from administrative or punitive segregation."

PD 04.05.120 ¶ KKK.

Likewise, Plaintiff cannot show a violation of his liberty interest in the issuance or processing of the misconduct tickets. "A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *McMillan v. Fielding,* 2005 WL 1389523, *2 (6th Cir. 2005)(*citing Sandin,* 515 U.S. at 484). Plaintiff has made no such claim here.

### E. Fourth Amendment Claims

The Court is unable to discern the factual basis for Plaintiff's Fourth Amendment allegations. In any case, Plaintiff's unelaborated claim that Defendants violated his privacy interests should be dismissed. "Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson supra,* 468 U.S. 517, 525, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.*; *see also U.S. v. Smith,* 526 F.3d 306, 309 (6th Cir. 2008).

### F. Conspiracy Claims

Defendants, deeming Plaintiff's conspiracy allegations "conclusory," argue that these claims should be dismissed. *Defendants' Brief, Docket #18* at 5. Defendants argue that "[t]he mere fact that [they] took actions that Plaintiff did not like does not mean that they conspired to violate Plaintiff's constitutional or statutory rights." *Id.* at 6.

Plaintiff's allegations of conspiracy are construed pursuant to 42 U.S.C. § 1985(3), which "prohibits a conspiracy 'for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.'" *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 314 (6th Cir. 2005); 42 U.S.C. § 1985. To maintain a cause of action under § 1985 claim, "one must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Radvansky,* 395 F.3d at 314 (6th Cir. 2005)(internal citations omitted). "The mere drumbeat

-18-

repetition of words such as 'arbitrary,' 'capricious,' and 'conspiracy' do not suffice to turn lawful conduct into a violation of federal rights, and courts will not look with favor on complaints which, trading on mere conclusory charges, fail to set out the specifics of a tenable claim." *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506 (1st Cir. 1987).

For the reasons discussed in Sections **A-E.**, Defendants have established as a matter of law that there were no constitutional violations.  Plaintiff therefore cannot meet the elements of a conspiracy claim.  *Radvansky,* 395 F.3d at 314.   For this reason, Plaintiff's apparent theory under 42 U.S.C. §1986 that Defendant Smith unconstitutionally *acquiesced* to the other Defendants' conspiracy to deny Plaintiff's rights is also without merit. "Section 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Radvansky* at 314 (*citing* 42 U.S.C. § 1986).   However, "[w]here plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *Braley v. City of Pontiac,* 906 F.2d 220, 227 (6th Cir.1990).

### G.  Qualified Immunity

Likewise, because there was no violation of Plaintiff's constitutional rights, the Defendants are also entitled to dismissal on the basis of qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002).   Under *Saucier*, the threshold question is whether a constitutional violation occurred.  If it did not, a state officer or agent acting in the course of his or her official duties is protected by qualified immunity.  For the same reasons, Plaintiff's claim for equitable relief, asking that Defendants be enjoined from retaliating against him for filing the present suit, and request for a prison transfer, fail in the absence of a constitutional violation.  Moreover, to show irreparable harm–a requirement for injunctive relief–a plaintiff

must demonstrate harm that is not merely speculative or unsubstantiated. *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). This the Plaintiff has not done.

### H. State Law Claims

The Complaint also alleges state law violations of libel and slander, abuse of process, ethnic intimidation, and malicious prosecution. "When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion." *Schirrick v. AU Sable Valley Community Mental Health Authority* WL 373038, 7-8 (E.D.Mich.,2006)(Lawson, J.)(*citing Blakely v. United States,* 276 F.3d 853, 860 (6th Cir.2002)); 28 U.S.C. § 1367(c)(3). Because dismissal of the federal claims is appropriate, the Court should "decline to exercise its supplemental jurisdiction over state law claims." *Dallas v. Holmes,* 2005 WL 1313801, *7 (6th Cir. 2005); *Weeks v. Portage County Executive Offices,* 235 F.3d 275, 279-80 (6th Cir.2000). Plaintiff's state law claims should therefore be dismissed without prejudice. *Dallas* at *8.

## IV.  CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Docket #18] be GRANTED, dismissing all federal claims against Defendants Ball, King and Smith with prejudice. State law claims should be dismissed without prejudice.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  January 12, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 12, 2009.

s/Susan Jefferson
Case Manager